IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ESTEFANY GALINDEZ LOPEZ,<br><br>Defendant. | **8:26-CR-31**<br><br><br>**ORDER ON THE GOVERNMENT'S MOTION FOR REVIEW OF REVOCATION OF A RELEASE ORDER** |

This matter is before the Court on the Government's Motion for Review of Revocation of a Release Order (Motion for Review) asking the Court to overrule a magistrate judge's order granting defendant Estefany Galindez Lopez pretrial release. Filing 6. On motion of the Government, the Court stayed the magistrate judge's release order pending the Court's ruling on the Motion for Review. Filing 10 (Motion for Emergency Stay); Filing 11 (Order Staying Magistrate Judge's Release Order). The Court ordered the defendant to file a written response to the Government's Motion for Review and granted multiple extensions of that deadline upon defense counsel's request. *See* Filing 13; Filing 16; Filing 19 (Text Order); Filing 34. The defendant's written response was ultimately due on or before May 26, 2026. Filing 34 (granting the defendant's request that the Court extend her response deadline to May 26, 2026). On May 27, 2026, the defendant filed a Reply to the Government's Motion for Revocation of Pretrial Release, Filing 43, and an Unopposed Motion to Extend Filing Deadline, Filing 44, representing that defense counsel "had difficulty filing the reply brief on May 26th, 2026, after office hours." The Court finds good cause to grant the

defendant's Unopposed Motion to Extend Filing Deadline and will therefore deem the defendant's Reply timely filed.

The Court has conducted a *de novo* review of the record in this case and has considered the parties' submissions. For the reasons stated below, the Government's Motion for Review is granted, and the magistrate judge's release order is revoked.

## I.    BACKGROUND

On February 18, 2026, the grand jury in the District of Nebraska returned a one-count Indictment charging nineteen coconspirators, including the defendant, with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Filing 1. The Indictment alleges that the defendants engaged in an "ATM jackpotting conspiracy" wherein they would deploy malicious software (malware) designed to exploit the vulnerabilities of Automated Teller Machines (ATMs) and Interactive Teller Machines (ITMs), causing the machines to dispense cash without debiting an account. Filing 1 at 2–3, 7. The Indictment alleges that the jackpotting attacks served as a "revenue stream" for Tren de Aragua (TdA), "a violent transnational criminal organization that originated as a prison gang in Venezuela in the mid-2000s" and that has been designated as a Foreign Terrorist Organization by the United States Secretary of State. Filing 1 at 1, 3, 6. The Indictment also includes a Forfeiture Allegation seeking forfeiture of at least $6,126,321.00 as proceeds traceable to the charged offense. Filing 1 at 8–9.

On March 26, 2026, the defendant was arrested in the Western District of North Carolina. *See* Docket, United States of America v. Lopez, Case No. 3:26-mj-46 (W.D.N.C. 2026). She made her initial appearance before a magistrate judge in that district on March 27, 2026, at which time the Government moved for detention. A detention hearing was scheduled for April 1, 2026, and was ultimately held on April 3, 2026, in the Western District of North Carolina. On March 30, 2026, the

Probation Office for the Western District of North Carolina prepared a pretrial services report recommending that the defendant be detained "[d]ue to the defendant's ties to a foreign country, lack of verifiable information, and the defendant being a citizen of another country." Filing 5-10 at 4. The report stated that "there is no condition or combination of conditions to reasonably assure the defendant's appearance in court." Filing 5-10 at 4. At the detention hearing, however, United States Magistrate Judge David Keesler granted the defendant pretrial release and entered an order setting conditions of release and a $25,000 appearance bond. Filing 5-9. The Government made an oral motion to stay the proceedings. Judge Keesler granted the Government's oral motion on the record and stayed the release order until Wednesday, April 8, 2026. Filing 45.

On April 7, 2026, the Government filed a Motion for Review of Revocation of a Release Order in the District of Nebraska, asking this Court to review and overrule Judge Keesler's order. Filing 6. The Government also filed an Index of Evidentiary Materials in support of its motion. Filing 8. In its Motion for Review, the Government proffers that the defendant "was identified as a part of TdA's money laundering network." Filing 6 at 3. Specifically, the Government avers that the defendant "participated in [ ] high velocity, low dollar transfers" that TdA allegedly orchestrated to "transfer and conceal" proceeds obtained during jackpotting attacks. Filing 6 at 2–3. The Government alleges that as one of TdA's "money launderers," the defendant used a Bank of America account in her name to exchange funds with "alleged leaders involved in the jackpotting conspiracy with ties to TdA" and with "other alleged money launders for the conspiracy, either in their individual capacity or with their shell companies." Filing 6 at 3. The Government asserts that the defendant is "originally from Maracay, Aragua, Venezuela" and that there is an Immigration Customs and Enforcement (ICE) detainer in place for her. Filing 6 at 4. The Government's proffered evidence includes a Review of Records from the Bank of America account tied to the defendant

(Exhibit 1); a Federal Bureau of Investigations (FBI) report dated March 31, 2026, and detailing the arrest of the defendant (Exhibit 2); an FBI report dated April 1, 2026, summarizing a post-*Miranda* interview of the defendant (Exhibit 3); and an Immigration Detainer – Notice of Action from the Department of Homeland Security (Exhibit 4). Filing 8 at 3–5 (Exhibit 1), 6–7 (Exhibit 2), 8–12 (Exhibit 3), and 13–16 (Exhibit 4).

On April 8, 2026, the Court ordered counsel for the defendant to file a written response to the Government's Motion for Review no later than 12:00 p.m. CDT on Friday April 10, 2026. Filing 9. Then, later on April 8, the Government filed a Motion for Emergency Stay of a Release Order asking the Court to stay Judge Keesler's order of release pending the Court's review of that order pursuant to the Government's Motion for Review. Filing 10. The Court subsequently stayed Judge Keesler's release order. Filing 11. The Court extended the defendant's deadline to file a response to April 14, 2026, Filing 13, but after learning that the defendant's counsel in the Western District of North Carolina would not be representing the defendant in the District of Nebraska, the Court referred the issue of appointment of counsel to United States Magistrate Judge Ryan C. Carson and stated that it would set a response deadline following the appointment of counsel. Filing 14. On April 15, 2026, the defendant was appointed counsel in this case, Filing 15, and the Court set a response deadline of April 21, 2026. Filing 16. The defendant's counsel then filed two motions seeking an extension of the response deadline, both of which the Court granted. Filing 18 (Unopposed Motion to Extend Filing Deadline); Filing 19 (Text Order) (granting the defendant's request that the Court extend her response deadline to May 8, 2026); Filing 33 (Unopposed Motion to Extend Filing Deadline); Filing 34 (granting the defendant's request that the Court extend her response deadline to May 26, 2026).

On May 27, 2026, defense counsel filed a Reply to the Government's Motion for Revocation of Pretrial Release, Filing 43, and a third Unopposed Motion to Extend Filing Deadline, Filing 44, seeking a single day extension of the response deadline. In support of the motion for an additional extension, defense counsel represents that she was unable to file the defendant's response on May 26 "due to technical difficulties" and that counsel for the Government "has no objection to the request to extend the filing deadline by one day." Filing 44 at 1. The Court finds good cause to grant the defendant's requested extension. Accordingly, the Court will consider the defendant's reply brief to be timely filed.

The defendant argues in her brief that the Government's Motion for Review "does not allege error by the United States Magistrate Judge or provide an adequate basis for continuing to detain Ms. Galindez Lopez." Filing 43 at 1. Instead, the defendant asserts, the "crux of the Government's argument for detention is that Ms. Galindez Lopez is a foreign national charged with allegedly committing conspiracy to commit money laundering while working with a terrorist organization." Filing 43 at 2. The defendant proffers that she "has been in the United States for three years" and that when she "first came to the United States, she was legally afforded protection by the United States." Filing 43 at 2. The defendant "then filed for asylum status" after "assert[ing] that she was a victim of abuse," and she points to the Notice of Filing (Asylum I-589) document that was admitted at her detention hearing before Judge Keesler. Filing 43 at 2; Filing 5-7 at 7. The defendant contends that although she is not a United States citizen, "she made it clear she has no intention of returning to Venezuela based on her request for asylum status." Filing 43 at 3. The defendant also identifies the following "factors" as "reasons" Judge Keesler considered in granting the defendant pretrial release: "Ms. Galindez Lopez has a young son," "she has a home in North Carolina," she has a "lack of criminal history," she has "significant family support who were present at the hearing," the

charged "crime is serious but less serious overall," and the defendant "allegedly received a very modest sum for her involvement." Filing 43 at 2; *see also* Filing 45. In support of her reply brief, the defendant has submitted an audio recording of the detention hearing from April 3, 2026, before Judge Keesler. Filing 45.

## II. APPLICABLE STANDARDS

A magistrate judge's decision to release or detain a defendant pending trial is governed by 18 U.S.C. § 3142. Under 18 U.S.C. § 3145(a), "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation" of a magistrate judge's order granting a defendant pretrial release. 18 U.S.C. § 3145(a)(1). The Government's "motion shall be determined promptly." 18 U.S.C. § 3145(a). The district court's review of a magistrate judge's pretrial release order is *de novo*. *See United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc) (noting that the district court proceeds *de novo* in its review of a magistrate judge's pretrial bond order); *United States v. Cook*, 87 F.4th 920, 921 (8th Cir. 2023) (referencing the district court's *de novo* review of the magistrate judge's pretrial detention order).

Under 18 U.S.C. § 3142(e)(1), a defendant will be detained pending trial if there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." The Eighth Circuit Court of Appeals has explained that the Government bears different burdens of proof for showing that the defendant is a flight risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant, and for showing that the defendant is a safety risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Specifically, pretrial detention is warranted "[o]nly if the government shows by clear and

convincing evidence that no release condition or set of conditions will *reasonably assure* the safety

of the community and by a preponderance of the evidence that no condition or set of conditions . . .

will *reasonably assure* the defendant's appearance. . . ." *Id.* at 797 (emphasis and ellipses in the

original) (quoting *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003)). In determining

whether the Government has met its burdens to prove that the defendant is a flight risk and a safety

risk, the Court considers the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including—
>
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III. LEGAL ANALYSIS

Here, the Government argues that the defendant should be detained pending trial because

"there are no conditions that will reasonably assure her appearance" and "perhaps more importantly

in this case," because there are no conditions that will "reasonably assure" the "safety of any other

person and the community." Filing 6 at 4, 5. The Court has conducted a *de novo* review of the record

and finds that the Government has met its burden to prove that the defendant is both a flight risk and

a safety risk. Accordingly, the Court concludes that the defendant shall be detained pending trial. Because the Court can determine this matter on the record before it, the Court further concludes that there is no need to hold a hearing. *See United States v. Martin*, 447 F.Supp.3d 399, 402–03 (D. Md. 2020) ("However, 'there is no statutory requirement that the court hold a hearing' and the court 'retains the discretion to decide whether to hold a hearing.'" (quoting *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019))).

In reaching this conclusion, the Court has evaluated the four factors set out in 18 U.S.C. § 3142(g) and "take[n] into account the available information concerning" those factors. First, the Court has considered the "nature and circumstances of the offense charged," conspiracy to commit money laundering. 18 U.S.C. § 3142(g)(1). Although conspiracy to commit money laundering is not one of the offenses enumerated in 18 U.S.C. § 3142(g)(1), the allegations in the Indictment are sufficiently serious in nature and suggest the defendant's participation in a complex, wide-reaching scheme with direct ties to a designated Foreign Terrorist Organization, TdA. The Indictment and the Government's Motion for Review allege that members and associates of TdA have used ATM jackpotting attacks to steal millions of dollars from financial institutions by conducting surveillance, breaking into ATMs, and deploying malware that forces the ATMs to dispense cash. Filing 1 at 3; Filing 6 at 2–3. The Indictment asserts that proceeds of the jackpotting attacks are split among many individuals, with the participants in a particular attack keeping a percentage of the proceeds and the remainder being delivered, distributed, transferred, or deposited with other members of the conspiracy, including conspiracy leaders and leaders of TdA. Filing 1 at 7. It is also alleged that members of the conspiracy use "high-velocity, low dollar transfers over peer-to-peer payment applications" to move the proceeds after an attack, and that the accounts connected to the payment applications are in individuals' names or in the names of business that are typically both Limited

Liability Companies and shell companies. Filing 1 at 7. The criminal activity alleged in this case is sophisticated and lucrative, and it apparently fits into a much bigger picture than the jackpotting attacks alone, as the Government contends that the proceeds obtained by the jackpotting attacks are funneled to TdA, which "has an extensive portfolio of criminal activities to include, 'illegal gold mining, drug trafficking, firearms trafficking, commercial sex trafficking, kidnapping, robbery, theft, fraud, and extortion.'" Filing 1 at 1, 6; Filing 6 at 2. In light of this, the Court concludes that the nature and circumstances of the offense charged weigh in favor of detention.

Second, the Court has considered the "weight of the evidence" against the defendant and finds that this factor also weighs in favor of detaining the defendant pending trial. 18 U.S.C. § 3142(g)(2). The Government proffers that the defendant participated in the high-velocity, low dollar transfers of jackpotting proceeds, and it has produced a summary review of a Bank of America bank account—on which the defendant was the sole signer—showing that between January 11, 2024, and February 12, 2026, the defendant received $114,089.56 via multiple Zelle transfers and sent $117,305.66 via multiple Zelle transfers. Filing 6 at 3; Filing 8 at 4–5 (Exhibit 1). The Government avers that the defendant engaged in financial transactions with alleged leaders of the jackpotting conspiracy, including four individuals whose names appear on the bank account summary and who have been indicted for conspiracy to provide material support to terrorism in case number 8:25cr242. Filing 6 at 3. The Government's proffer includes evidence of a post-*Miranda* interview in which the defendant told law enforcement officers that she did have a Bank of America bank account and that she knew or had heard of Jose Wladimir Tejera Abreu (Jose) and Wladimir Jose Tejera Abreau (Wladimir), two defendants in case number 8:25cr242 who the Government proffers are leaders of the jackpotting conspiracy and affiliated with TdA and whose names appear on the summary review of the defendant's bank account. Filing 8 at 3–5 (Exhibit 1), 10–12 (Exhibit 3); Filing 6 at 3, 6.

Although the defendant denied using her bank account to launder money, denied knowing that Wladimir and Jose were members of TdA, and denied sending money to either man, she did state that she had previously been in a romantic relationship with Wladimir and lived with him for a time before they broke up in December 2024 after he became physically abusive and the Government has proffered evidence from the defendant's bank account showing exchanges with those men. Filing 6 at 3–4; Filing 8 at 4–5 (Exhibit 1), 11–12 (Exhibit 3). The Government has also proffered evidence that the defendant was in possession of two cell phones when she was arrested and that she initially claimed ownership of both phones, then later denied ownership of one of the phones, and then re-claimed ownership of both phones in her post-*Miranda* interview. Filing 6 at 3; Filing 8 at 7 (Exhibit 2). Viewed against the backdrop of the allegations in the Indictment, the weight of the evidence against the defendant is significant enough to suggest that detention is appropriate.

Third, the Court has examined the "history and characteristics" of the defendant. 18 U.S.C. § 3142(g)(3). The Government argues that the defendant has "extensive ties outside of the" United States which support pretrial detention. Filing 6 at 6. The Court agrees. The defendant has not challenged the Government's assertion that she is a Venezuelan national from the state of Aragua— the same state where TdA originated—and that her parents still live in Venezuela. Filing 6 at 6; Filing 8 at 8–9 (Exhibit 3). Although the defendant has denied any association with TdA, there is evidence that she admitted to a previous relationship with Wladimir, a man the Government proffers is a leader of the jackpotting conspiracy and associated with TdA. Filing 6 at 6; Filing 8 at 11–12 (Exhibit 3). The defendant contends that her family and community ties are to North Carolina, but the Court concludes that her ties to a foreign country and to a Foreign Terrorist Organization weigh more heavily. *See* 18 U.S.C. § 3142(g)(3)(A) (providing that the Court should consider, among other factors, a defendant's "family ties, employment, financial resources, length of residence in the

community, [and] community ties"). There is proffered evidence demonstrating that the defendant came to the United States less than three years ago, indicating a much shorter "length of residence" in the United States than outside of the United States. 18 U.S.C. § 3142(g)(3)(A); Filing 6 at 6; Filing 5-10 at 2. There is also evidence of an ICE detainer against the defendant. Filing 8 at 13–16 (Exhibit 4). The Court has considered the remaining factors set forth in 18 U.S.C. § 3142(g)(3) and concludes that the defendant's connections to Venezuela and to TdA outweigh those factors and instead weigh strongly in favor of detention.[1]

Finally, the Court has considered "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). The Court's evaluation of this factor necessarily turns on many of the facts already discussed above, including the serious nature of the offense that the defendant has been charged with, the connection between the alleged criminal activity and TdA, and the defendant's admitted association with accused leaders of the jackpotting conspiracy. The Court is particularly concerned with the role TdA is alleged to play in the offense charged and with the defendant's alleged connections to TdA given

---

[1] The Government avers in its Motion for Review that the defendant "potentially attempted to deceive the Court in relation to release." Filing 6 at 6. According to the Government and to the pretrial services report prepared by the probation officer in the Western District of North Carolina, the defendant provided the probation officer with an address on "Atmore Ford Road" that the probation officer was unable to locate. Filing 6 at 6–7; Filing 5-10 at 2. The Government acknowledges that the probation officer may have misheard the defendant's address when she verbally reported it, as there is evidence suggesting that the defendant rents an apartment on "Ardmore Forrest Road," which is phonetically similar to "Atmore Ford Road." Filing 6 at 7; Filing 5-7 at 4. However, the Government notes that the defendant's North Carolina drivers' license lists an entirely different address—one on "Rolling Meadows Lane." Filing 6 at 7; Filing 5-7 at 14.

The defendant contends that "the 'lie' presented by the Government that Ms. Galindez Lopez provided a false address can be attributed to the language barrier." Filing 43 at 3. The Court also notes that the defendant's North Carolina drivers' license was issued on June 5, 2025, Filing 5-7 at 14, which was prior to the start date of the defendant's lease for the apartment on Ardmore Forrest Road, Filing 5-7 at 4. During the detention hearing before Judge Keesler, the defendant's North Carolina counsel represented that the address on the defendant's drivers' license was her prior address. Filing 45. Regardless of whether the probation officer misheard "Atmore Ford Road," the Court finds that there are ample other aspects of the defendant's history and characteristics weighing in favor of pretrial detention as set forth in the body of this order.

TdA's status as a designated Foreign Terrorist Organization and the violent criminal activities TdA is accused of perpetrating. The Court concludes that these facts weigh in favor of pretrial detention.

## IV. CONCLUSION

Based on the Court's *de novo* review of the record in this case—including the audio recording of the detention hearing, the evidence submitted at the detention hearing, the facts alleged in the Indictment, and the parties' arguments and proffered evidence—the Court finds that the Government has met its burden to prove by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance. The defendant's significant ties to Venezuela, her immigration status in the United States, and her prior relationship with an accused leader of the jackpotting conspiracy suggest that it is more likely than not that the defendant poses a flight risk. The Court also concludes that the Government has proven by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Although the Court acknowledges that the charged offense is not itself a violent offense, the Court believes the Government has proffered sufficient evidence at this time connecting the charged offense to a violent organization and connecting the defendant to both alleged members of and alleged conduct committed by that organization. Taken together, the nature and circumstances of the charged offense, the weight of the evidence against the defendant, her ties to Venezuela, and her association with alleged TdA members all demonstrate a high probability that the defendant poses a safety risk.

The Court therefore grants the Government's Motion for Review of Revocation of a Release Order and revokes Magistrate Judge Keesler's order releasing the defendant pending trial.

Accordingly,

IT IS ORDERED:

12

1. The defendant's Unopposed Motion to Extend Reply Deadline, Filing 44, is granted;

2. The Government's Motion for Review of Revocation of a Release Order, Filing 6, is granted;

3. Defendant Estefany Galindez Lopez is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

4. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel; and

5. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 29th day of May, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge